May it please the court. I'm Richard H. Mays from Little Rock. I represent the plaintiff's Russellville Legends LLC. It's a limited liability corporation. The managing member of that LLC is here with me, Mr. Eric Jackamere. This case is an unusual case. I think it involves what is called a flowage easement that was given to the Corps of Engineers in 1964 by a previous owner of the real estate that's involved in this case. That's not so unusual. The unusual part is in 1996 the Corps of Engineers gave or executed a document called a consent to easement structures to a subsequent landowner, the person who owned the land immediately prior to my client's acquisition. Counsel, I'm sorry to interrupt. I'm having trouble understanding your hearing here. Could Is that better? That's better, thank you. You're welcome. The consent to easement structures was issued by the Corps of Engineers in 1996 to the person who owned this property immediately prior to my client. The initial easement was restricted to land under the elevation, surface elevation of 334 feet above mean sea level. So that the record owner could use the property above that level. He was restricted in the use of it before that or under that level because of the flowage easement and he could not build any structures on it. In the consent to easement structures which the Corps gave to the then owner of the property in  person who owned this particular property that was designated in the consent. Where in the language of the consent are you getting this implicit? Your Honor, the consent to easement structures says that the, I'll beg your pardon, let me get it. It authorizes the fill. It's kind of indirect, Your Honor. It's it authorizes. That's what's critical to this case. It's part of it, yeah. It authorizes the fill of the area that is designated in the exhibit to the easements, consent to easement structures above the elevation of 334. Thereby removing the property that is filled up to above that level from the easement that is still in effect on the remainder of the property. The now therefore doesn't say anything about the level. I'm looking at your addendum page 14. Yes, it's on the addendum page 14. Now therefore the United States hereby gives consent to Joe Phillips for the placement of fill material not to exceed 7,000 cubic yards. And then provided provision number two, the giving of this consent does not in any way subordinate the United States prior easement rights which included the ability to Well, the... So on the four corners of the consent, the claiming is an enforceable real property document that runs with the land. The subordination agreement, Your Honor, in paragraph two, and I recognize that it goes further and I question what the subordination means in that context. But it's explained in the subsequent sentences in that particular paragraph in that it specifies the United States shall not be liable for any damage or injury to the structures hereby consented to which may be caused by any action of the United States under easement. In other words, they anticipate that structures are going to be placed on the area that the Corps released or the Corps designated in this consent and but that the United States would not be liable. Where are the structures? Well, the consent is to fill. The fill is a structure under the Corps regulations. Fill is a structure. If you place 7,000 cubic yards of fill on this area that is designated in the consent to easement structures, that takes the property above the 334-foot elevation. Well, I'm not sure that takes it out of the easement. If it's placed above the 334 elevation, the easement only applies to elevations under 334. Well, we can't get that from the consent. If you look at the correspondence between Mr. Phillips, the Corps of Engineers and the city of Russellville that preceded this agreement, it is clear that the purpose of the consent to easement structures was to allow the owner, Mr. Phillips, in return for his allowing. I understand all that and I understand the area. Let me jump ahead. Your client, the district court said this was not a proper declaratory judgment. I think that was wrong, Frank. I do, I do, too. Under, and this is an Abbott Labs situation where a client is seeking declaratory judgment. Yes. To avoid uncertainty. Yes. Now the, in order to come to issue with the Corps, your client made an application for a permit under section 408. Yep, yes. And by implicitly consenting that this required 408 approval. There was a meeting with the Corps in which we expressly stated to the Corps, we didn't think they had any authority under section 408 to require an application. That's not an issue on appeal. But then we, I'm sorry. Well. Then we said to try to accommodate the Corps' concerns, we would submit the 408 application, which was done. And it was denied, and we're reviewing the denial. Yes. That's the second part of the appeal. The first part is whether the Corps. First part, as far as I'm concerned, doesn't get you anywhere. Well, but the court, the order of the district court said that the declaratory judgment act was not applicable. Let me ask it a different way. Where in the easement documentation is there a provision that says complying with the easement frees you from any obligation to obtain a 408 permit? It certainly is not in the consent document. It is in the sense that the document still relates back to the original easement, which limited the Corps' easement to under 334 feet. Okay, but forget the easement. You still have section 408. 408, in our opinion, does not apply. I know that's your opinion. And I don't see anything on its face that makes it inapplicable. The 408 applies to damage or interference with or damages to or use of government structure for Corps of Engineering structures. There is a case in the height. A flowage easement can't be a government structure? The settling pond that the Corps is protecting here? An easement is a property right. It is not a structure. There are structures in this. A sump pond is. They're a structure. Well, that's a good question. And that's a question the district court did not reach. We've claimed that the channel that is involved in the creek, that the creek channel is not a structure. There is a case in the Ninth Circuit that so holds that a ditch is not a structure for purposes of section 408. What about the Russellville dike? That's clearly a structure. We're not affecting that dike. Well, but the Corps reached a different conclusion is my understanding. They said it was going to impair the usefulness of the dike. Well, they concluded that and that's the second part of the case. The Corps of Engineers had absolutely no basis for saying that. There's nothing in the administrative record that upholds the Corps' position that the placement of this project on this property is going to make any difference at all in the surface elevation of the water or in the velocity of flow of the water. Well, let me ask you this. I just want to go back to the initial question, which is when Judge Loken read the consent, it said that the Corps was reserving the right to continue to, you know, require approval because, I mean, theoretically, you could, I mean, under your position, you could build a, you know, a hundred-story skyscraper if there's no limitations on it, no matter what it did to the dike and everything else. But we're not building in the easement. There are a lot of cases that say you cannot build a structure in a flowage easement to elevate the property out of the easement. We're not doing that here. That's not the case here. This is the first case that I have been able to find that deals with the issue of consent to easement structure. Yeah, but I think your argument would have more merit if the Corps hadn't expressly reserved its right to still need to approve anything because they presumably gave you the fill. Well, but they have. There's other property in this that my client owns that he got that is in the easement structure. The northernmost 10 acres of the property is still in the easement structure, and that's not what we're proposing to build on. Well, counsel, assuming that the easement is out of the picture for the reason that you say, can you hear me? I hear you, but I didn't understand what you said. I'm sorry. Can you hear me now? I hear you fine. All right, thank you. Assuming that the easement is out of the picture for 408 purposes, wouldn't 408 be implicated because of the possibility your activity is interfering with some other project of the Corps? Yes, and that's what the application was about, and that's the second part of the appeal. The Corps of Engineers found that it would interfere with it, but the administrative record, which is what you have to evaluate that on, absolutely does not support that. It has nothing in it that supports the conclusion of the Corps of Engineers. All right, let me ask you a related question. I'm sorry, I don't have much time. What about the executive order that talks about discouraging buildings and structures and floodplains? Does the Corps have general jurisdiction over building and floodplains, or is this a freestanding kind of free-flowing power of the Corps, or what? The Corps of Engineers has jurisdiction over things like wetlands and so forth, but generally speaking, if you want to build a structure outside of a floor easement, you can do so. There's nothing to stop you. Well, that's not what I'm asking. This building in the floodplain, is that some kind of... No, it's ahead. Is that involving some federal regulatory difficulty, automatically involving the Corps? The city of Russellville has jurisdiction over issuing floodplain construction permits. We have a permit from the city of Russellville to do this project. I see, okay. I have not understood that aspect of the case. So Mr. Phillips was... Seems to me what he wanted here, as you are interpreting it, was to eliminate the government's easement rights. Yes, and that's very clear in the correspondence. Right in the middle of the flowage easement, we can do anything we want. It's on high ground, your honor. In fact, the Corps initially... Because of the approval, because of the consent. So the argument is the consent... The consent... Because Phillips had this clever idea that he would do a quid pro quo with the Corps and the city. And it strikes me his idea, what he was doing, was to eliminate the government's easement rights. Well, he still... They still have easement rights on a portion of his property. This was high ground. It's a flowage easement, and there's nothing left. Oh no, no. There's a whole lot of flowage easement left on all sides. Channels on each side? Yeah, there's a whole lot of flowage easements on both sides of this property. A whole lot. It's not blocking... In footage, how much? I thought it was a ditch here and a ditch here, and everything else now is part of the easement. I don't have an absolute dimension, but I know that it's quite wide. It's quite wide. It's not in the floodway at all. But what percentage of the width of the flowage easement is now out from under the... I'll give you an estimate. I would say maybe at this particular property, which is only a small portion of the entire flowage easement, it's at the end of the flowage easement. It's not in the middle of it. There's a road right beside this property, a road that's not in the flowage easement. I thought the 700 came out of here, way at the end of down by the sump ponds, and now we're going to take out of the easement right in the middle, so there's no flowage, no easement. The dominant party's expectations are destroyed by this interpretation.  This is not taking away the flowage easement at all. It's taking high ground out of a certain middle of it. It's creating high ground which had been in the easement, leaving nothing except a flood danger. The administrative record shows that when Mr. Phillips was trying to get this property released initially in 1996, one of the core people in the head of the regulatory group said this is not in the easement. I was going to ask you about that. It seemed to me in Mr. Cabe's letter for the Corps of July 18, which is quoted on your brief on page 24, he says it's subject to our review. Why isn't what we're reviewing on this appeal? The review he was referring to, and it's unfavorable, and his August 13 letter quoted on page 27 was not binding as a 408 decision. Mr. Cabe and the entire Corps staff reviewed this application. Anyway, I'm talking legal, I'm talking ad-law terms now. His letter, his first letter said the obvious. Yes. This is not going to be subject to our review. And they all reviewed it. They can't, you know, staff can't do things. But he had the authority to do it. Under section 408, he didn't have the authority to bind the court to a 408 decision. The head of the regulatory, the head of the other section, real estate section of the Corps office in Little Rock, Arkansas, had the authority. It's a good practical argument, and I sympathize with the regulated parties of the world who rely on that, and it turns out not to be legally enforceable. But it seems to me that Mr. Cabe and his bureaucratic superiors didn't have the right to issue a binding 408 permit grant. Well, the Corps has never raised that. The Corps has never raised that issue. I mean, they've never claimed that that was unauthorized. This morning, that's the second part of our appeal. But it seems to me you have to prevail if there are two parts to your appeal. You have to prevail on both. Okay. I agree. And the district court completely dismissed the declaratory judgment action on the basis. The district court got that wrong in my head. He did. He did. My colleagues may disagree. Yes. But in any event, you had to prevail in an Abbott Labs world. And that meant... I hope so, Your Honor. Pardon? I hope so. Well, what legal authority would permit us to take what the staff did in 1996 as binding the Corps in this 408 application? Just give me a legal authority. The Corps of Engineers delegates authority. And the Corps has never said that Mr. Cabe didn't have the... I know what you can argue. I can argue it, too. And it's frankly an argument that has a lot of practical appeal. But have you got any legal support for it? That they don't have the... That Mr. Cabe had no authority for that? That what staff said informally... 20 years ago binds the Corps today. The Corps today, at least when we were going to the Corps initially on this 408 and whether we had to submit that and whether they didn't have the authority, acknowledged that the consent to easement agreements was still in effect. They, you know, they were staff. Well, but the Corps staff... I mean, the head of the real estate... Maybe there's an estoppel argument out here, but you haven't made it. And I'm not hearing you coming up with a legal support for the notion. The Corps has never made it either, Your Honor. They've never disclaimed the authority that was exercised in this case. They took your client's permit application and denied it. Following the 408 permit application? No, they've never denied that the consent to easement agreement... Maybe we're arguing about two different things. They have never denied the validity of the consent to easement agreement. I thought that's what you were asking about. Okay, you're asking about the 408. Yeah, that's what you keep calling the second part of the appeal. You've got to win that. Well... And I'm looking for legal authority that allows you to bind the Corps' 408 powers by what staff told your client 20 years ago. Well, but that's not... Okay. That's not the same issue, in my opinion. The 408 was not... You're acknowledging it's the second part of your appeal, and you're acknowledging you have to win it. The 408 was not involved until this last round. It was not involved in... We're not going to... Our ships are going to travel in different directions on this. I'm sorry, Your Honor. I didn't mean to be disrespectful. I'm not being disrespectful. You don't understand the question. That's fine. Let's move on. All right. Thank you. Mr. Chairman. May it please the court. My name is Richard Pence. I'm an assistant U.S. attorney in the U.S. Attorney's Office in Little Rock. Represent the defendants in this appeal. First, I'll just briefly touch on the consent document. It was executed in 1996 from the court to the previous landowner. The developer here obviously argues that the developer has the benefit of that consent agreement, and it gives the developer the right to add field dirt to the property as was given to the previous owner. But I think for the developer to have the benefit of that consent agreement now, this court would have to be persuaded that that consent document somehow conveys an interest in real property that attaches to the land and transfers from owner to owner in the chain of title. In other words, runs with the land. And that's not what I'm wondering, counsel. What effect do you think that, if any, that document had on the existing easement? None? I'm sorry, sir. Would you repeat that? What effect would that document have on the easement? Did they have no effect on it? The original floor easement? According to the conditions of the easement, the only right given to the landowner was a right to add field dirt. It did not give the previous landowner the right to build apartments. And you can tell us from the conditions that Judge Larkin has mentioned. So that's the only thing. Can you hear me, counsel? Yes, sir. I can hear you. Oh, I'm sorry. I think we're having a technical difficulty here. But by giving the landowner permission to do what he did, why wouldn't that be an abandonment of your original easement under Arkansas law? Arkansas law does control the effect of this document. Isn't that correct? Yeah, yes, sir. That would be. Arkansas poverty law. Yes, sir. Isn't this an act that's inconsistent with the existence of the easement and therefore would work in abandonment of it? No, sir, because as I mentioned, the consent had conditions. And one of the conditions was that the Corps reserved its right of fireproof. Counsel, you're answering by the terms of the consent. The question was a property law question. Yes. No, I don't know. I don't see any basis for abandonment of the. If Russellville's. There's an Arkansas case back in Fayetteville in 1991 that says that an abandonment of an easement will be presumed where the owner of the right does and permits to be done any act inconsistent with his future enjoyment. Well, I don't. Why wouldn't this be an act inconsistent with the future enjoyment with what we could call your original easement? Well. First thing I would say is this point was not raised in the district court that. Well, I think the abandonment was, but in any event. OK, we're just passing it over for the moment. I'm just wondering if you might have a reaction to the question. Well, the my reaction is there's no abandonment under Arkansas law if that were a legitimate issue in the case, because the consent says that the Corps reserves all of its rights, all of its prior rights under the 1964 of foliage easement deed the government got, and that would include everything that's in that easement deed, which includes the restrictions on habitable structures and the right of the court to approve any structure. OK, thank you. You're welcome. Well, hypothetically, if Mr. Phillips had had made this request in. 2018 or whenever it was. Well, what would be what would be the answer to this case? I don't have any doubt he would have been denied. I like this. The Corps came out with guidelines. We wouldn't have any runs with the land problem. We you'd be denied on the merits. I would think yes. And would it be denied on the merits of. In proper interpretation of the consent or of proper, proper 408 decision or both? I would say it would be based primarily on practical considerations, giving a landowner a consent to add field or whatever the conditions you put in the easement, it might lead to problems. The landowner might take a different opinion. And I mean, it's just is a practical matter, the safe thing to do, and I think would have been done in 2018 would have been denied. But the. The court held very importantly here that even if that consent to easement structures was still in effect and the developer had the benefit of it, the developer still has to apply for a 408 permit. And the reason for that is that the Rivers and Harbors Act comes into play. 33 U.S.C. 408 requires a permit for anybody that's going to do anything that would alter, obstruct, use or occupy a flood control project. And the flood control project here, I believe it's already been mentioned, is the Russellville dyke and the pumping station and the sump area that drains into the pumping station. This is a low area, naturally collects water and excess water is pumped out over the dyke. So that is the flood control project. The developer in its 408 application submitted these hydraulic models to show the effects of the proposed development on water surface levels and velocity. What's your best case for the proposition that this sump and the dyke and so forth are, in the words of Section 408, the work built by the United States? Well, the. Particularly the easement itself. Well, it's not the easement. It's the sump area, the dyke and the pumping station. Those features control flooding for the protection of the surrounding area, which would be the city of Russellville as well as the college campus. I understood opposing counselors say there's a Ninth Circuit case suggesting that's not enough. Those aren't work, this flowage type control, flood control is not a work built by the United States. Is that wrong? I don't see how the court, any court, could look at the description and send the record of the dyke or levee, if you want to call it, that was constructed. And the pumping station there that has so many pumps, I like to operate, I like for the most part, automatically, that that's not a flood control project. What about the, I'm just going to throw this out, we do have an old case that seems to go a little differently than the Ninth Circuit. It's the Federal Barge Lines case from 1978. I don't know if you're familiar with that. I don't even know if the party's briefed it, but it's 573 F. 2nd, 993. I don't think this was brought to the attention, it wasn't argued in the district court level that the, and there's another, it's not just the dyke and pumping station, the Corps has an ongoing channel modification project on Prairie Creek. And that definitely would, and obviously, their partners would have an effect on the purpose of that channel modification. Well, in the Federal Barge Lines case is one that I think the government would have brought up. It's more favorable to the government's position than to Russellville's, Russellville Legend's position. Okay, well, we'll take it if it's favorable to the government. But that was not an argument in the district court, that there was no flood control project involved. But as I mentioned, these hydraulic models were presented, the Corps looked at them, it got the Corps' attention. There's an illustration in the district court record and in the Appaloose appendix. The models show that at three locations in the apartments, the first floor would be under less than a foot of water. But more importantly, this project is on a slope, and the parking lot and the exits would be, which are lower in the apartments, would be two to three feet underwater. And at one point on the Prairie Creek, the increase in the channel velocity would take the, in a flood event, would take the velocity of the channel at that location to over five feet per second. Well, but that's not in the common flood, is my understanding. That's in the hundred-year flood scenario. Which I understand, I just want to be clear, this is not something that would happen every other year or whatever. That's correct, sir. But that's the, apparently, the planning tool used for floodplain management and anti-government and private industry is the 100-year, the FEMA 100-year flood event. And that's what was submitted and that's what the Corps looked at. And the Corps found, I think, naturally and obviously, seven apartment buildings, swimming pool, courtyards, and so forth, sitting in this sump area is going to obstruct the natural flow of water. Now, practically speaking, the question I had is, I know what a sump does. I have a sump in my house. But what I'm trying to figure out is, on the impairment issue, which is in Section 708, it just wouldn't work as well. It couldn't keep up. That's my understanding of what would happen. It would still function somewhat. Because, but now with the big structures in place, with all these, you know, swimming pool and everything, it couldn't keep up in a 100-year flood. Am I understanding the mechanics, the thermodynamics of this correctly? That's correct. It's the effect, not only, you know, where will the water go? That's one consideration. Is there enough ground to absorb it or hold it? The other considerations are the increase in velocity and also the water surface level, which relates to flood risk. And that's what the Corps was looking at. They found an unacceptable flood risk to people and property and impairment of the channel modification project and the dike and pumping station. So the Corps has, and then the Corps also relied on the restriction against habitable structures, which the Corps believes is still in effect. So the Corps had a rational basis. And that's the, I think the bottom line for review of this type of decision, whether or not the decision is arbitrary and capricious. The Corps did have a rational basis for denying the section 408 permit. So assuming that the Corps reserves the right essentially to just assuming that for the moment, would that decision be reviewable on an abuse and discretion basis or not? Or is it just something they get to do where we know it? I would think that if a landowner asked for permission to add filter in a flowage diesel and the Corps said no, that a case could be brought under the Administrative Procedure Act as was done here, challenging that. Okay, so I suppose I've seen structures of the development itself. Would that, would the decision not to allow the development itself just on the ground that we get to say whether you can do that or not, would that be reviewable under the APA? I'm sorry, I didn't hear you, Judge Arnold. Let's talk about the development itself, not the filter, but the proposed development. Can you hear me now? Yes, sir. Okay, thank you. Would that decision, if the Corps simply said, no, you can't do this development, would that be subject to review under the APA? Or is it just something, some unreviewable discretion that the Corps has? Well, I'll just give you an opinion, that's worth what you paid for it, but I would think it would be reviewable, but I don't know of any precedent that applies to that scenario, Judge Arnold. I'm not aware of any case law that, that... We've had a lot of cases on the Missouri River battles between the Dakotas and the states of North and South Dakota and the state of Missouri. I see. And the Corps' decisions come up for abuse of discretion review periodically. Well, there appears to be some precedent that that decision could be... But they're not necessarily decisions under an easement consent document. Right, yes, yes. So that would seem to be the case that it could be reviewed. Well, my time is up. On this easement, I'm not sure I understand it, but was the entire easement that's pictured in the briefs, that was all under 334 feet when the easement was signed? Every square inch of it was below 334? If so, and now we get accretion like you get in the Mississippi River all the time, and all of a sudden 80 square feet are 336. Does that come out? What impact does that have on the easement? Well, I don't think the accretion is an issue here. No, it's not an issue here. Well, I mean, I don't think it's ever impacted this particular property. I'm just asking for your understanding of these easements, maybe. I'm not, I'm... This is man-made accretion that they want. Well, it would be if you brought in filler. With 700 here, so I can build the twin towers where the fill comes back in. Well, theoretically, I guess you could, but I don't think the Corps would be very happy with a high building. Anyway, I'm trying to answer your question. This particular flowage easement is 20 acres, and it is a 334-feet contour line on that 20 acres. Yes, there are other flowage easements, of course, in the sump area, but the project is on the 20-acre flowage easement. So, I appreciate the court's attention. Thank you very much. Thank you. Is there rebuttal time? His time had expired, Your Honor. I'll give you a minute to respond to anything that has come up. Mr. Mays? Thank you, Your Honor. I appreciate the additional time here. Well, you've been using up everybody's time. I want to make clear, if I may, that the statements that my friend, Mr. Pence, made and are based on the Corps of Engineers' statements are not true. And I don't mean Mr. Pence's deliberately falsifying information, but if you read the record, if you read the record, you will find that the only study that was done of these elevations and the effect that the fill would have on the flowage easements were done by our contractor, FTN Associates, which is the premier consultant in our consultants. And Ms. Smithhurst, with the Corps of Engineers, deliberately falsified those statements in the FTN report. They are nothing like what Ms. Smithhurst of the Corps of Engineers said about there being flooding in Russellville, about deaths in the development that would be built on this property, or by any effect on the speed of the water, the velocity of the water, or the water levels. If you compare the FTN report that's in the appendix, and Ms. Smithhurst's characterization of those reports to the colonel that are also in the appendix, there is no comparison. It is a deliberate misrepresentation. I don't know why, but Ms. Smithhurst, and listen, I've been with an environmental agency, I'm as zealous as anybody about the environment, but she is overly zealous about keeping this property out of, from being developed. It is not supported by anything in the administrative record that is the Corps' conclusions, and it was arbitrary and capricious for them to make those statements and to deny the 404 approval. Now that I've got... All right, Judge Logan, would you indulge me one question, please? Sure. Mr. Bates, is it true the abandonment issue wasn't raised below? We did not specifically raise it by name, but we did point out that once you give the consent to the easement fill, and you tell the owner of the property he can fill it whenever he wants to, that's exactly what they did in this case. How do you go back from that? What if Mr. Phillips had filled all of that property within the period of time that he still owned the property, which was several years before my client got it? There would have been no going back. How could they have done that? They would have had to remove 7,000 cubic yards of fill. It's just not... Okay, I understand. Thank you very much. Thank you, Your Honor. Anybody else? Thank you. Thank you. Thank you, Counsel. It's an interesting case involving complex things, which at least I was not familiar, and the arguments have been helpful, and the briefs as well, and we'll take it under advisement.